**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward James Powell, | No. CV-25-08105-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Edward James Powell's application for Supplemental Security Income by the Social Security Administration ("SSA"). Plaintiff filed a complaint with this Court seeking judicial review of that denial. (Doc. 1.) After reviewing the briefs (Doc. 20, 24-25), and the Administrative Record (Doc. 13-14, "A.R."), the Court affirms.

## I.   BACKGROUND

### A.  Procedural History

Plaintiff filed for supplemental security income on May 2, 2018, alleging disability beginning December 28, 1994. (A.R. at 15.) The claim was denied on July 24, 2018, and again upon reconsideration on March 15, 2019. (*Id.*)

Plaintiff then filed a written request for hearing received on April 15, 2019. (*Id.*) Following the hearing on December 20, 2021, the Administrative Law Judge ("ALJ") issued an opinion on February 14, 2022, in which the ALJ found Plaintiff "not disabled" because a significant number of jobs in the national economy existed that the claimant

remained capable of performing within his vocational profile and residual functional capacity. (*Id.*) Plaintiff appealed the decision to the Appeals Council. The Appeals Council vacated the February 14, 2022, decision and remanded for further consideration. (*Id.*) Following another hearing, the ALJ issued another unfavorable decision on March 25, 2025. (*Id.*) Plaintiff now seeks review of the decision.

### B. ALJ Determination

Here, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since May 2, 2018, the application date." (A.R. at 18.) The ALJ then determined that Plaintiff had the following severe impairments: "chondromalacia of the left knee, fibromyalgia, asthma, obesity, bipolar disorder, social anxiety disorder, dysthymia, panic disorder, dependent personality disorder, mild neurocognitive disorder, and transient alteration of awareness." (*Id.*) The ALJ next concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 21.) The ALJ then determined that Plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 416.967(b) except that the claimant can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs, but never balance defined by the Selected Characteristics of Occupations or climb ladders, ropes, or scaffolds. The claimant can work with occasional concentrated exposure to non-weather related extreme cold; pulmonary irritants, such as fumes, odors, dust, gases; and poorly ventilated areas. The claimant can have no exposure to dangerous moving machinery and unprotected heights. He can engage in no occupational driving. The claimant can perform work involving understanding, remembering, and carrying out simple instructions. He can perform work with occasional changes in a routine work setting. He can perform work with no specific production rate, such as that found on an assembly line. He can have no in-person interaction with the public, occasional interaction with coworkers, and frequent interaction with supervisors.

(*Id.* at 25.)

The ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 39.) Examples of such jobs included router, cleaner, housekeeping, and marker positions. (*Id.*) Accordingly, the ALJ

- 2 -

concluded that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 40.)

## II.    LEGAL STANDARD

Generally, a reviewing court addresses only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's determination only if it is not supported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step sequential evaluation. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant is not working in a substantially gainful activity, then the evaluation of the claimant proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant's impairment is severe, then the inquiry proceeds to step three. *See id.* At step three, the ALJ considers whether the

claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, then the ALJ assesses the claimant's RFC to determine whether the claimant is still capable of performing past relevant work before moving to step four. *Id.* § 416.920(a)(4)(iv), (e)-(f). At step four, the ALJ must determine whether the claimant retains the RFC to perform the requirements of past relevant work. *Id.* If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (g). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

## III.    DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting (1) the medical evidence from psychologist Frances Robbins, Ph.D., psychiatrist Katherine Cheeves, M.D., and nurse practitioner David Jenson, D.N.P., and (2) his own symptom testimony. (Doc. 20 at 12, 23.)

### A.  Medical Evidence

Plaintiff argues that the ALJ erred by "rejecting the assessments completed by Dr. Robbins, Dr. Cheeves, and NP Jenson without providing sufficient explanation that included a rational interpretation of this record supported by substantial evidence, including failing to explain the consideration of supportability and consistency factors with citation to substantial evidence under the agency's regulations for evaluation of medical source opinions." (Doc. 20 at 12.)

Dr. Robbins examined Plaintiff in October 2014. (A.R. at 717.) The ALJ summarized Dr. Robbins' medical opinion as follows:

> After completing a neuropsychological evaluation of the claimant involving both the claimant and his mother, she opined, generally cognitive deficits particularly in the areas of attention, speed of processing, and working memory with very limited awareness and poor coping skills inadequate to address even day to day living. As such, she believed the claimant was incapable of work.

(A.R. at 34.)

An ALJ must assess all the medical evidence when formulating a claimant's RFC. 20 C.F.R. § 404.1545(a)(1). RFC is an administrative, not medical, finding concerning a claimant's ability to work. *Id.* § 404.1546. In examining medical evidence, an ALJ must articulate how persuasive he or she finds all the medical opinions from each doctor or other source. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023). Under the revised regulations applicable here,[1] supportability and consistency are the "most important" factors for an ALJ to consider in this analysis. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)). Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence. 20 C.F.R. § 404.1520c(c)(1). Consistency measures how a medical source compares with others; "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). "[A]n ALJ need only provide 'an explanation supported by substantial evidence.'" *See Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792).

The Court finds that substantial evidence supports the ALJ's evaluation of Dr. Robbins' opinion. In addressing consistency, the ALJ explained that "limits suggested are excessive in light of the regularity of normal findings, such as normal mood and affect and normal cognition during the current period." (A.R. at 34 (citing A.R. at 911, 1485, 1490, 1889, 2017, 2021, 2136).)

Therefore, substantial evidence supports the ALJ's decision to find Dr. Robbins' opinions unpersuasive due to inconsistency with other medical evidence. Any alleged deficiency in the supportability discussion would therefore be harmless. *See Woods*, 32 F.4th at 792-94 n.4 (suggesting that even where an ALJ provides no supportability analysis

---

[1] Plaintiff filed his benefits application after March 27, 2017, so the revised SSA regulations govern how the ALJ evaluates and considers medical opinions. *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022).

for a medical opinion, the ALJ may properly find the opinion unpersuasive so long as there is an inconsistency finding supported by substantial evidence); *Archunde v. Comm'r of Soc. Sec. Admin.*, No. CV-24-01993-PHX-JAT, 2025 WL 520534, at *6 (D. Ariz. Feb. 18, 2025).

Dr. Cheeves examined Plaintiff between March and May 2020. (A.R. at 1622-25.) The ALJ summarized Dr. Cheeves' medical opinion as follows:

> Based on the treatment of the claimant, she opined the claimant's mental impairments cause moderate limitations remembering locations and work-like procedures, carrying out simple one- or two- step instructions, and understanding and remembering simple instructions. . . . She thought the claimant would be absent more than three times per month. In explanation, she stated the claimant has had persistent severe impairments since childhood and he has never been able to function in a normal range.

(A.R. at 34-35.)

The Court finds that substantial evidence supports the ALJ's evaluation of Dr. Cheeves' opinion. In addressing consistency, the ALJ explained that these medical opinions were inconsistent with the provider's own treatment notes. (A.R. at 35 (citing A.R. at 1626-30.) The ALJ further found the opinion to be inconsistent with the self-reported activities (*Id.* (citing A.R. at 1075, 1480, 2070)), the frequency of normal findings on mental status examinations (*Id.* (citing A.R. at 1889, 2017, 2021, 2136)), and normal findings of mood and affect. (*Id.* (citing A.R. at 1485, 1487, 1490).)

Furthermore, the ALJ explained that Dr. Cheeves' treatment note–indicating some motor retardation, flat affect, poor concentration, and depressed mood, but otherwise noting grooming was normal and that Plaintiff exhibited goal directed thoughts with adequate judgment and insight–supported some limitations based on Plaintiff's mental impairments. (*Id*. at 35). But that overall the "normal findings during the short period of treatment are not indicative of the 'moderately severe' or 'severe' limitations opined." (*Id.* (citing A.R. at 1626-30).) Therefore, substantial evidence supports the ALJ's decision to find Dr. Cheeves' opinion unpersuasive due to inconsistency with other medical evidence.

David Jenson, D.N.P., examined Plaintiff in August 2020. (A.R. at 1631-34.) The ALJ summarized Nurse Jenson's opinion as follows:

- 6 -

Based on his treatment of the claimant, he opined the claimant has mild limits to remembering locations and work-like procedures, carrying out simple one- or two-step instructions, understanding and remembering simple instructions, carrying out detailed instructions, being aware of normal hazards and taking appropriate precautions, and maintaining socially appropriate behavior and adher[ing] to basic standards of neatness and cleanliness.

(A.R. at 35.)  The ALJ further summarized Nurse Jenson's opinion saying, "he thought the claimant would be absent more than three times per month" and "Nurse Jenson indicated the claimant's mental impairments make day-to-day life difficult." (A.R. at 36.)

The Court finds that substantial evidence supports the ALJ's evaluation of Nurse Jenson's opinion. In addressing consistency, the ALJ explained that Nurse Jenson's opinion was inconsistent with his own treatment notes. (A.R. at 36-37.) The ALJ explained that the "mental examination notes documented some mood abnormalities with what he classified as a 'mild' impairment to concentration, but normal memory, judgment and insight." (*Id.* (citing A.R. at 1747, 1759, 2044-45, 2054).) The ALJ further explained that other examinations revealed "normal concentration and average intellectual function" (*Id.* at 37 (citing A.R. at 1923, 2040)) and Nurse Jenson noted the Plaintiff's "mood was stable, he was sleeping well with medications, had no psychotic symptom, and his anxiety was controlled." (*Id.* (citing A.R. at 2055).) The ALJ also found Nurse Jenson's opinion inconsistent with the broader record, which included normal findings on mental status examinations "throughout the record." ((*Id.* (citing A.R. at 1476, 1501, 1709, 1720).) Therefore, substantial evidence supports the ALJ's decision to find Nurse Jenson's opinion unpersuasive due to inconsistency within his own treatment notes and the broader record.

Finally, Plaintiff argues that the ALJ failed to adequately explain the cited inconsistencies. (Doc. 20 at 12.) While the ALJ did not discuss every cited record in detail, the ALJ is not required to "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). As discussed, the Court finds that the ALJ adequately explained her evaluation of Dr. Robbins', Dr. Cheeves', and Nurse Jenson's medical opinions under the applicable regulations, and substantial evidence supports her finding the opinions unpersuasive.

- 7 -

**B. Symptom Testimony**

Plaintiff also argues that the ALJ "err[ed] by rejecting [Plaintiff]'s symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence" in the record. (Doc. 20 at 23.)

In evaluating a claimant's subjective symptom testimony, an ALJ applies a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). If there is such objective evidence, and "no evidence of malingering," "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The question on review is not whether the Court is convinced, but whether the ALJ's rationale is "clear enough that it has the *power* to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (emphasis added). In making this determination, the ALJ may consider inconsistencies between the claimant's testimony and the objective medical evidence, the treatment history, and the claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements regarding "the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (A.R. at 26.)

Because the ALJ made no finding of malingering, the question is whether she articulated specific, clear, and convincing reasons for discounting Plaintiff's testimony. The Court finds that the ALJ did so. She explained that Plaintiff's claimed symptoms were inconsistent with the objective medical evidence, his treatment history, and his reported

daily activities. (A.R. at 28-30.) These are recognized bases for discounting subjective symptom testimony. *See Thomas*, 278 F.3d at 959 (holding that inconsistencies between subjective complaints and objective medical evidence is a clear and convincing reason for discounting claimant's testimony); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

Substantial evidence supports the ALJ's reasoning. First, although Plaintiff testified to social anxiety, panic disorder, and difficulty being in public, the ALJ highlighted areas in the record that indicated "he was able to implement coping strategies to mitigate his symptoms" and "he often denied symptoms, including insomnia, mood swings, suicidal ideations, hallucinations, anxiety, depression, and memory loss." (A.R. at 29.)

Second, the ALJ explained that Plaintiff's symptom testimony was inconsistent with the normal or average findings in the record regarding Plaintiff's memory (A.R. at 30 (citing A.R. at 1442, 1584, 2017, 2021, 2136)), concentration (*id.* (citing A.R. at 1574, 1584, 1923)), and intelligence (*id.* (citing A.R. at 1747, 1923).)

Third, the ALJ found that the activities Plaintiff reported to his providers do not support the limitations Plaintiff attributes to his impairments. (*Id.*) In support, the ALJ cites Plaintiff's activities such as video gaming (*id.* (citing A.R. at 66, 1902)), playing other games (*id.* (citing A.R. at 1603)), providing care for his mother (*id.* (citing A.R. at 2070)), painting therapy (*id.* (citing A.R. at 1615)), and the driver's education program (*id.* (citing A.R. at 2059, 2064).)

Fourth, the ALJ highlighted statements in the record that may indicate "delaying activities pending the outcome of [the] case." (*Id.*) In support, the ALJ cites the statement from the record saying, "[the claimant] may do some [You]tube videos for some income but is awaiting his disability hearing so not able to get a job at this time" (*id.* (citing A.R. at 1574)), and "he also can't volunteer for the humane society, because if he can do that, then he'd be able to work." (*Id.* (citing A.R. at 1615).) In addition, the ALJ recounted

- 9 -

further inconsistencies between the symptom testimony and Plaintiff's reports to the providers, including Plaintiff's testimony that learning to drive was "too nerve wracking" (*id.* (citing A.R. at 68)) compared to a medical note that said, "he is wanting to get his driver's license but needs money." (*Id.* (citing A.R. at 1574).)

Viewed as a whole, the ALJ adequately identified which aspects of Plaintiff's testimony were inconsistent with the record and provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony.

## IV.   CONCLUSION

The Court finds that substantial evidence supports the ALJ's decision.

**IT IS ORDERED** affirming the ALJ's decision (A.R. at 15-40).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 27th day of July, 2026.

James A. Teilborg
Senior United States District Judge

- 10 -